## Jesse W. Goodrich *vs.* James M. Stone.

The proprietor and publisher of a newspaper, being sued for a libel published in his paper, filed a specification of defence, stating that he should prove that the publication complained of was inserted in his paper, during his absence, without his consent or knowledge, by accident, and without the knowledge or agency of any person in his employment: On the trial, it appeared that the defendant had employed F. to print the newspaper; that F. employed several workmen under him ; and that S., one of F.'s workmen, set up the libellous article, in the absence of the defendant and of the editor of the paper: The defendant proposed to ask a witness, " if, at or about the time S. printed the article, or set it up, he " (the witness) " heard him express ill will towards the plaintiff; and, if so, what he said." *Held*, that the question could not be put.

In the trial of an action against the proprietor of a newspaper, for a libel published therein by his agent, in his absence, and without his knowledge or consent, the plaintiff may give in evidence an article published in a subsequent number of the same newspaper, with the defendant's knowledge and consent, justifying the publication of the article complained of as libellous, though such article was not published until after the action was commenced.

This was an action of trespass upon the case, commenced on the 1st of July 1845, for the same libel which was the subject of the next preceding case of *Goodrich* v. *Davis;* and the declaration was the same (*mutatis mutandis*) as in that case. With the general issue the defendant filed this specification of defence : That if the publication was libellous, he would prove that the article was inserted in the newspaper of which he was publisher, without his knowledge, consent or approbation, he being absent at the time, and that it was inserted by accident, without his knowledge, or the knowledge or agency of any person in his employ ; that an article of similar import was presented to him for publication, a short time previously to the appearance of the article in question, which he absolutely refused to publish ; that he was necessarily absent, and did not return till after the present suit was brought, and not in season to disclaim or explain the same before said suit was commenced, but which was done at the earliest opportunity.

Goodrich *v.* Stone.

At the trial before *Hubbard*, J. the defendant admitted that he was the proprietor and publisher of " The State Sentinel and Worcester Reformer," the newspaper in which the alleged libel was published as an advertisement; and he alleged that it was inserted wilfully by J. F. Simmons, who was not in his employ, and without the approbation, consent or knowledge of the defendant or any of his authorized agents.

Edward R. Fiske, a witness called by the defendant, testified that he made a written bargain with the defendant on the 22d of March 1845, to print the " State Sentinel," &c.; that he purchased of the defendant the printing materials, the defendant being the owner of the newspaper and the subscription; that J. Harrington had most to do with the editorial part, furnishing the editorial and selected matter; that the only business of the witness with the defendant was to print the paper; that Harrington, as the witness supposed, was the authorized agent of the defendant, and that no one besides Harrington and the defendant was authorized to furnish editorial matter; that there was a drawer in the printing office, into which was put the copy that was to go into the paper; that the witness took what was found in the drawer for publication, and that his next recourse was to the editors : That the defendant went to Boston, about the 1st of June 1845—having an appointment in the custom house—and had no regular time for coming to Worcester; that he sometimes came once in two weeks, and sometimes once in three weeks; that he was not about the printing office on the 27th of June, nor that week ; that Harrington was in Worcester on that day, but was not in the office on the preceding day, (26th,) in the afternoon of which the paper was struck off : That the workmen in the office were employed by the witness, and that the defendant had nothing to do with them; that the article complained of was at the case of J. F. Simmons, one of the workmen, whom the witness saw reading it, and supposed, but did not know, that Simmons set it up : That the witness knew the hand writing of Harrington, but could

not swear that the article was in his hand writing, nor could he remember that he had ever said that it was.

The defendant's counsel proposed to ask this witness, " if, at or about the time Simmons printed the article, or set it up, he heard him say or express ill will towards the plaintiff, and, if so, what he said." The judge did not permit this question to be put.

The witness further testified, that he knew that an article was handed into the printing office, a few weeks before June 27th 1845, reflecting on the plaintiff; that the defendant was then in the office, and refused to publish said article.

E. B. Briggs, called by the defendants, testified that he worked in the printing office for the said Fiske, the preceding witness, in June 1845, and knew that J. F. Simmons, another of Fiske's workmen, had ill will towards the plaintiff, about that time, and that he set up the article in question ; that the defendant was not then in Worcester, but was in the printing office about a week afterwards, and disapproved of the article, and said that if he had been at home, it would not have been admitted into the paper.

J. Harrington, also called by the defendant, testified that he furnished copy for the defendant's newspaper, and had charge of it during the defendant's absence, and put original and selected matter into the copy drawer in the printing office ; that he was absent on the 26th and 27th of June 1845, and did not put the article in question into the drawer, nor order it to be set up, and that it did not go into the paper with his approbation; that the defendant said, about a week after the said article was published, that he should not have published it, and expressed regret that it had gone into the paper : That the witness, with the concurrence of the defendant, made a statement in the defendant's newspaper of July 4th 1845, in the following words : " EXPLANATION. One word with regard to the advertisement of Mr. Hiram Davis, in our last. It was inserted in the absence of the publisher, and without his knowledge or consultation. He is not, therefore, justly obnoxious to censure for its appearance, nor for having given countenance

or currency to the matters it contains. This fact ought to have appeared in the paper accompanying the advertisement. Thus much is deemed a matter of justice to the publisher of this Journal:" That another article was inserted in the same paper, (July 4th,) as follows: "As the editor of the 'Massachusetts Cataract' has commenced actions for slander against Hiram Davis and the publisher of this paper, for the article that appeared in it last week, and has thrown no obstacles in the way of getting out this number, as he,might have done by attaching, with other property, the paper that was wet down and half printed off for this week's edition of the same, we would, in justice to him, announce these facts to our readers. ☞ The above is furnished and published at the request of the editor of the Cataract." The witness also testified that this last article was in the hand writing of the plaintiff, except the words after the hand, which he (the witness) added.

The plaintiff called witnesses, who were permitted to testify, (the defendant objecting,) that they had read the publication in question, and understood it to apply to the plaintiff.

The judge instructed the jury, that if the proprietor of a newspaper, who derives profit from the establishment, intrusts the publication to an agent in whom he confides, he is himself responsible for what appears in his paper, although it is not shown that he was personally concerned in the particular publication; but that such proprietor might show that the piece complained of was published contrary to his orders, or that it was done clandestinely, or that some deceit was practised upon him, or that the publication was made under such circumstances that neither he nor his agent participated in it; that if the jury believed that Harrington wrote the piece, or knew of its intended publication, and did not prohibit it, then the defendant would be liable; and also, that as the defendant was living away from the place of publication, and attending to other business, but held himself out to the public as the publisher and proprietor of the paper, then, if the jury found that Fiske knew of the intended publication and sanctioned it, the defendant would be liable; or if, through gross

negligence of Harrington and Fiske, the publication was made then the defendant would be liable ; and that though the jury should find that Harrington was not concerned in writing the piece, nor in its publication, and that Fiske did not sanction the publication, and they were not guilty of gross negligence in suffering it to be published, yet if the defendant, after its publication, saw the piece, and justified its publication as an advertisement, by another piece in a subsequent paper, he would be liable to the plaintiff, in like manner as though he had originally known of the publication, and that it was no justification or excuse that the libel was inserted as an advertisement, and was published in the regular course of business, like other advertisements ; and that the jury would consider of the piece published in the paper of the 4th of July, whether it was published with the knowledge and consent of the defendant, and, if it was, whether it was intended by him to justify the publication complained of, and if it was, then the defendant would be liable ; and that, in such case, they might consider how far such publication furnished evidence of malice in the defendant.

A verdict was returned for the plaintiff, which is to be set aside, and a new trial granted, if the foregoing rulings and instructions were erroneous.

The defendant filed a motion in arrest of judgment, as in the next preceding case of *Goodrich* v. *Davis.*

*G. Parker,* for the defendant.

*Bacon,* for the plaintiff.

DEWEY, J. The questions raised in the present case have in part been decided in the case of *Goodrich* v. *Davis,* (*ante,* 473,) in which an opinion has been pronounced. The remaining points, which are peculiar to the case, are, 1st, the rejection of the testimony of Edward R. Fiske, as to declarations of Simmons proposed to be offered from his reply to the following question propounded to Fiske, viz. : " If, at or about the time Simmons printed the article or set it up, he had heard him say, or express ill will towards the plaintiff, and if so what he said ? " This evidence was excluded, as we think, correctly, and for various reasons.

The inquiry was as to what Simmons said at or *about the time* of the publication of the article. Now clearly the declarations of Simmons on this subject, at a period subsequent to the publication of the libel, were not properly admissible. If such evidence be admissible at all, it must be confined to declarations at the time, and so connected as to make them admissible as a part of the act. To make them such, they must have been made at the time, and certainly not at a period subsequent to the time, of printing the article.

The evidence of Simmons's declarations in the matter was immaterial evidence. It could have no proper effect with the jury, in establishing any fact that would constitute a defence to the action.

It may be further added, that if this evidence was erroneously rejected, it would hardly require us to set aside the verdict and grant a new trial, inasmuch as the fact proposed to be inferred from the declarations of Simmons, viz., his actual ill will to the plaintiff, was fully established by much more direct testimony, admitted without objection. I refer to the testimony of E. B. Briggs, who testified that he knew Simmons then entertained ill will against the plaintiff. There being no reason to suppose that this last witness was not fully credited by the jury as to his statement upon this point, it would seem that the defendant had the full benefit resulting from establishing ill will on the part of Simmons toward the plaintiff. But however this may be, the court, for the reasons already stated, are of opinion that the testimony was properly excluded.

2d. The only remaining point respects the instructions given to the jury. We do not understand that they were objected to by the counsel for the defendant, except in a single particular. The general scope and tendency of the charge, upon all those points which might be urged in defence of a publisher or proprietor of a newspaper, when sued for a libel published and circulated by his agents or servants in his absence, were very liberal, and certainly sufficiently favorable to the defendant. The objection now taken is to that part of the charge in

which it was stated, that if the defendant, after the publication of the libel by his agents, saw the piece and justified its publication, by another article published in a subsequent paper, he would be liable in like manner as though he had originally known of the publication ; and that, on this point, the jury would consider the character of the article published in the succeeding week. It is insisted, on the part of the defendant, that the libel complained of having been published June 27th, and this action instituted before the publication of the second article, the liability of the defendant must be fixed by the facts existing at that time, and that the subsequent publication of July 4th, being made after the date of the writ, can have no effect to charge the defendant in the present action. This position, we think, is untenable. In the ordinary case of a defendant, who was personally the publisher of the article alleged to be libellous, his subsequent conduct, arising either from his silent acquiescence in a construction generally and publicly given to the article, or his open avowal of his meaning and purpose in publishing it, might be resorted to as furnishing evidence of the true character and meaning of the article alleged to be libellous. But this species of evidence is peculiarly pertinent, and is of more moment, where the defendant is an absent proprietor of a public newspaper, and the article alleged to be libellous was printed by his agents or servants during his absence. If he could avail himself of a defence founded upon the fact that the publication was made contrary to his intent, and against his orders, or through some fraudulent act of another, he should avail himself of the earliest practicable opportunity to disavow the publication, and to disown it and repudiate it, in plain and direct terms, such as will, as far as possible, correct the error, and repair the wrong unintentionally inflicted through the columns of a newspaper, of which he is the proprietor. If, on the contrary, he subsequently publishes an article in reference to such previous article, giving it his sanction, or omitting to repudiate it and retract the charge contained in it, such subsequent article may properly be introduced as indicative of the true position

of the proprietor of the paper, as to the previous article. It is true that the question of libel or no libel relates to the first publication ; but that question may be materially affected by subsequent acts or declarations of the publisher. The jury might therefore well be directed to consider the fact of such subsequent article being published, and from it might be authorized to draw inferences as to the meaning of the previous article, and whether it was published with or without the approval of the proprietor of the paper. The instructions upon this point were correct. All the objections taken by the defendant are therefore overruled.

*Judgment on the verdict.*